453 So.2d 635 (1984)
Steven Wesley PEERY, Sr.
v.
Maria Laticia Molina PEERY.
No. 16594-CW.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1984.
Rehearing Denied July 6, 1984.
*636 James E. Franklin, Shreveport, for plaintiff-applicant.
Booth, Lockard, Politz, LeSage & D'Anna by Nyle A. Politz, Shreveport, for appellee.
Before MARVIN, FRED W. JONES and NORRIS, JJ.
PER CURIAM.
In this custody proceeding we granted a stay order and ordered portions of the record to facilitate our consideration of the application of the father for a discretionary review of the trial court's judgment sustaining an exception of res judicata and declining to exercise jurisdiction under the *637 Uniform Child Custody Jurisdiction Act (UCCJA), La.R.S. 13:1700 et seq. We reverse in part and remand with instructions.
Factual Context
The parents were married in California and shortly thereafter moved to Louisiana in 1977. Their child was born in Shreveport on November 13, 1978. About July 5, 1982, the mother left the father and moved with the child to California, the home of the mother.
In the mother's action for an interlocutory decree of divorce and custody in California, the father was personally served while visiting there in December of 1982. The judgment in that action was signed by the attorneys of both parties to the dispute on February 14, 1983.
About March 2, 1983, the mother and child returned to Louisiana and resumed living with the father until July 9, 1983. On July 9, 1983 the mother and child returned to California.
On July 22, 1983 the father brought an action in Louisiana for custody and legal separation. The mother was served through a curator and was informed by him of the action by his letter to her of July 28, 1983. However, the father did not comply with La.R.S. 13:1708[1] when he filed his petition, but verbally informed the Louisiana court of the California custody decree and introduced that decree into evidence. The judgment of the Louisiana court, dated September 19, 1983, granted the father a legal separation and awarded him custody of the child.
In September of 1983 the father went to California armed with his Louisiana judgment. The father and child then returned to Shreveport on or about September 23, 1983, where they have since resided.
Approximately one month later, the mother petitioned the California court to make the interlocutory divorce decree final and to have permanent custody of the child awarded to her. The father entered an appearance in that proceeding, asserting that the cohabitation from March to July of 1983 amounted to a reconciliation of the parties. On December 1, 1983 the California court rendered a judgment granting final divorce and holding that the cohabitation of the parties did not constitute a reconciliation and that the court had and continues to have jurisdiction of the parties. The California court then ordered the father to deliver the child to the mother.
On March 27, 1984 the father petitioned for a final divorce and for permanent custody in the Louisiana court, again failing to comply with La.R.S. 13:1708. The mother appeared in the Louisiana action, filing a peremptory exception of res judicata, pleading the California final divorce and custody decree.
The Louisiana court sustained the mother's exception of res judicata on May 31, 1984. The mother then filed a habeas corpus action, which, after a hearing on June 5 and 6, ordered the father to surrender custody *638 of the child to the mother. The father seeks this court's supervisory review of those rulings, each of which raises jurisdictional questions. We stayed the proceedings to consider these questions.
JURISDICTION and the UCCJA
The UCCJA, now adopted by 49 states, was promulgated for the stated purpose of avoiding jurisdictional competition in conflicts, promoting interstate cooperation, litigating custody where child and family have closest connections, discouraging continuing conflict over custody, deterring abduction and unilateral removal of children, avoiding relitigation in another state's custody decisions, and promoting exchange of information and other mutual assistance between courts in different states. See La.R.S. 13:1700.
The courts of California and Louisiana had the constitutional jurisdiction over the parties, but the issue of which court had proper authority to exercise its jurisdiction under the UCCJA limitations remains to be determined. The "jurisdictional" grounds under UCCJA for child custody determination are set out in the Louisiana statutes at La.R.S. 13:1702 and in the California statutes in Cal.Civil Code, §§ 5152 et seq. These statutes, adopted under the uniform act, are identical.
Other sections of the act that follow address the due process rights of the parties and prescribe appropriate procedures. Crucial to our determination are those sections which articulate the circumstances or situations in which the courts may and should decline to exercise jurisdiction. We stress this point because the parties speak of either California or Louisiana as lacking "jurisdiction" to act in the instant matter, when the more accurate inquiry is whether the UCCJA directs or allows the exercise of jurisdiction. Each state may assert jurisdiction under the multi-faceted components of Section 1702. Indeed, this case illustrates the jurisdictional competition and conflict which the UCCJA was designed to alleviate.
Consistent with the goal of avoiding, in this state, relitigation of custody decisions of other states, R.S. 13:1712 provides that the courts of this state shall recognize and enforce an initial or modification decree of a court of another state which has the same jurisdiction under statutory provisions that are substantially in accordance with Section 1702, or which was made under factual circumstances meeting the jurisdictional standards of Section 1702.[2]
*639 La.R.S. 13:1713 authorizes Louisiana to modify an out-of-state decree. Section 1713 provides as follows:
A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this Part or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.
B. If a court of this state is authorized under Subsection A of this Section and Section 1707 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with Section 1721.
The threshold question is whether California, which rendered the initial decree, had jurisdiction, or now has jurisdiction, under the peculiar jurisdictional prerequisites of the UCCJA, which are set forth in Subsections A(1) and (2) of Section 1702 of our law, quoted in footnote two.
About July 5, 1982, the mother left Shreveport with the child and began residing in California with her family. The record also reflects that the proceedings for an interlocutory decree of divorce and custody in California began on December 22, 1982, a period of approximately 5 ½ months. The record also reflects that the child previously resided all of his life in Shreveport with his parents. Additionally, it is undisputed that Shreveport was the only place of matrimonial domicile of the parents.
Under these circumstances, the California court lacked jurisdiction under UCCJA because it was not the home state of the child and did not have the significant connection with the child. Specifically, California failed to meet the home state requirement of the home state test because the child did not reside within the state for six consecutive months before the action was instituted.
Under the significant connection test, there must be available substantial evidence concerning the child's present or future care, protection, training, and personal relationship. The record clearly shows that the child has lived the great majority of his life in Louisiana and that substantial evidence concerning the child is available in Louisiana.
The validity of the initial Louisiana custody decree under UCCJA is also questionable. The father filed his action in Louisiana in July of 1983. On September 19, 1983, the Louisiana court awarded custody to the father.
The father did not fully comply with the UCCJA. The father failed in his first pleading to inform the court of the custody proceedings pending in the California court. Section 1708. The purpose of this section seeks to avoid conflicting child custody determinations from courts of different states. The record does reflect that the father verbally informed the Louisiana court of the California decree when the trial on his separation petition occurred. It appears that the Louisiana court improperly found that there were no simultaneous proceedings for custody pending in any other state. When the court was informed of the California proceedings, the Louisiana court should have proceeded as directed by Section 1705. This section provides for situations where proceedings may occur simultaneously in two or more states. The initial Louisiana decree, like the California initial decree, did not strictly comply with the apparent "jurisdictional" prerequisites of UCCJA.
The fact of non-compliance with UCCJA does not affect, however, the jurisdiction of the California court or the Louisiana *640 court to adjudicate the status of the marriage of the mother and father. The California divorce, rendered December 1, 1983, has become final. The Louisiana father personally appeared in that action. Under these circumstances, the trial court did not err in sustaining the mother's exception of res judicata directed at the father's 1984 action for a divorce in Louisiana. Brown v. Brown, 387 So.2d 565 (La. 1980).
Non-compliance with UCCJA should limit, however, the authority of courts in Louisiana and in California to render or to modify a custody decree in these circumstances. While this case illustrates the conflicts problem UCCJA seeks to resolve, this case is not typical because the father did not "snatch" the child from the mother and abscond with him to Louisiana from California. The record clearly shows that the father and the mother discussed and compared the initial California decree and the initial Louisiana decree with the police authorities in California before the father returned here with the child on September 23, 1983. The father did not use the guise of "visitation" to flee with the child. Any finding to the contrary by the trial court is clearly wrong.
This child lived in Louisiana the first three years and eight months of his life. He lived eight months in California (July 5, 1982March 2, 1983). Since March 2, 1983, with the exception of 2½ months (July 9September 22), he has lived in Louisiana, either with both parents or with his father. Yet it appears that paramount "best interest of the child," the UCCJA standard, has not been determined in a true adversary proceeding which complies with UCCJA.
Louisiana has jurisdiction under the home state provision and under the significant connection provision of UCCJA (LRS 13:1702 A(1) and (2)). The parents and the child are in Shreveport, Louisiana. Under these circumstances, we shall find that neither California nor Louisiana has previously complied with UCCJA and we shall reverse the trial court's judgment ordering surrender of the child to the mother by the father. We shall further direct that the parties and the trial court comply with UCCJA to exercise its jurisdiction and proceed in an adversary hearing to determine custody in the best interest of the child.
The trial court shall fully inform the California forum that it will exercise its jurisdiction to determine custody in accord with the provisions of UCCJA, LRS 13:1713(B). Due consideration shall be given to the transcript of record and other documents in all previous proceedings as authorized by LRS 13:1721. The trial court shall request from the California forum the documents and transcripts mentioned in LRS 13:1720, 1721, and shall utilize, where appropriate, the provisions of LRS 13:1717-1719 in order that the best interests of the child might be determined in an adversary hearing that complies with UCCJA. The trial court shall consult with the California forum and shall require the assistance of the litigants to insure compliance with UCCJA. Each litigant shall be allowed a reasonable time to amend his or her pleadings to limit the issues and to provide for an expeditious and efficient proceeding.
Costs, here and below, shall be assessed by the trial court in its discretion under the law, when and as often as the trial court deems proper after remand. The trial court may render other temporary orders as it deems necessary to facilitate the hearing and to allow the exercise of reasonable parental rights by each parent during the pendency of the hearing.
Writ granted and made peremptory. Affirmed in part, reversed in part, and remanded with instructions.
NOTES
[1] R.S. 13:1708.

A. Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:
(1) He has participated (as a party, witness, or in any other capacity) in any other litigation concerning the custody of the same child in this or any other state.
(2) He has information of any custody proceeding concerning the child pending in a court of this or any other state, and
(3) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
B. If the declaration as to any of the above items is in the affirmative the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.
C. Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding.
[2] R.S. 13:1702.

A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationship; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.
"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period. (LRS 13:1701(5))