587 So.2d 91 (1991)
Richard L. FAZIO, Plaintiff-Appellant,
v.
Barbara G. FAZIO, Defendant-Appellee.
No. 22783-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1991.
*92 Richard E. Hiller, Shreveport, for plaintiff-appellant.
J. Spencer Hays, Bossier City, for defendant-appellee.
Before MARVIN, C.J., and LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The plaintiff, Richard L. Fazio, appeals from a trial court judgment in which the court declined to exercise jurisdiction over this child custody proceeding. We affirm the trial court judgment.

FACTS
The plaintiff and the defendant, Barbara G. Fazio, were first married in 1981. Both parties were members of the United States Air Force. In 1983, while stationed in Germany, one son, Vincent Fazio, was born to the parties.
In 1985, the plaintiff and defendant were assigned to Barksdale Air Force Base in Bossier Parish, Louisiana. In 1988, the parties separated. At that time, the plaintiff and his son were living in Shreveport, Louisiana. The plaintiff filed suit for divorce against the defendant in Escambia County, Florida. The plaintiff alleged that although he was in military service, he considered Florida to be his permanent residence. The plaintiff also sought to be named the "primary residential custodian" of the parties' minor son. In 1988, the parties were granted a divorce by the Florida court and the plaintiff was named the primary residential custodian of the child.
The plaintiff and defendant subsequently reconciled and remarried in May, 1989. The plaintiff was stationed at Barksdale Air Force Base and the defendant was stationed in Hawaii. Plaintiff sought to be transferred to Hawaii. In August, 1989, the plaintiff and his son flew to Hawaii to make arrangements to establish the family home in that state. The child remained in Hawaii with his mother and the plaintiff, who had not yet been reassigned, returned to Barksdale.
Before the plaintiff could be reassigned, the defendant informed him that she once again wished to dissolve the marriage.
In November, 1989, the child returned to Louisiana to live with his father.
Also in November, 1989, the plaintiff again filed suit for divorce in Escambia County, Florida. As before, the plaintiff sought to be named primary residential custodian of the child. Among the allegations and pleadings set forth by the plaintiff was the fact that he and the child had a significant connection with the State of Florida. In that action, the plaintiff alleged he had been a resident of Florida for more than six months prior to institution of the action and that, although not physically present, due to his active duty military service, he made his home in Florida prior to his enlistment and intended to return to Florida after his release from service.
*93 The plaintiff filed an affidavit with the court, pursuant to the Florida Uniform Child Custody Jurisdiction Act, to establish jurisdiction of that court over the issue of child custody. The plaintiff asserted in his affidavit that from 1985 to August, 1989, and from November, 1989 until present, the child had resided in Caddo or Bossier Parishes in Louisiana. The plaintiff claimed to be a resident of Florida upon enlistment, that his parents and immediate family were residents of Florida and that the plaintiff intended to return to Florida and make it his home upon his release from active duty.
The defendant mother appeared in the Florida proceedings and also sought to be named primary residential custodian of the child. A contradictory hearing was held on the issue of divorce and child custody.
On June 25, 1990, the Florida court rendered judgment granting the parties a divorce. The Florida court also granted joint custody of the child, but named the defendant mother as the primary residential custodian. The Florida court found that it had jurisdiction over both the divorce and child custody proceedings and found that when the child left Hawaii and went to visit the plaintiff in Louisiana in November, 1989, the plaintiff refused to return the child to the defendant and almost totally eliminated the defendant's access to the child. The court found that "the mother can give the child the same opportunities as the father in a wholesome environment and is more likely to foster a better parent-child relationship with the non-custodial parent."
A formal judgment to this effect was signed by the Florida court on July 19, 1990.
On July 13, 1990, approximately two and one-half weeks after the hearing in the Florida proceeding and before the formal judgment was signed, the plaintiff filed suit in Bossier Parish, Louisiana, seeking custody of the child. The plaintiff alleged that, under the Uniform Child Custody Jurisdiction Act (UCCJA), the Florida court was without jurisdiction because neither the plaintiff, the defendant, nor the child resided in that state. The plaintiff contended that he and the child had resided in Louisiana since 1985 and that the most significant and substantive evidence regarding the child's care, protection, training and personal relationships was available in Louisiana.
In response to the plaintiff's new bid in Louisiana for custody of the child, the defendant filed exceptions of lack of personal jurisdiction, lack of subject matter jurisdiction and res judicata.
On November 27, 1990, the trial court sustained the defendant's exceptions of lack of subject matter jurisdiction over the custody of the child and res judicata.
The court found that while Louisiana had jurisdiction as the home state of the child, more than one court could have jurisdiction under the UCCJA. The issue was then whether that jurisdiction should be exercised by the Louisiana court. The Louisiana trial court noted that only a few weeks earlier the plaintiff had argued that Florida indeed had jurisdiction over the custody of the child. The trial court found that at the time the Florida court rendered judgment in this case that court did, in fact, have jurisdiction under the theory of significant contacts. The court stated that the present suit filed in Louisiana was nothing more than a collateral attack on the Florida judgment. The court declined to accept jurisdiction.
The plaintiff appealed the trial court ruling. The plaintiff contends that the trial court erred in declining to exercise jurisdiction over this child custody matter.

JURISDICTION AND THE UCCJA
The plaintiff claims that the Florida court lacked jurisdiction to determine the issue of child custody because Florida was not the child's home state. The plaintiff contends that Louisiana is the child's home state and that Louisiana courts should properly determine the issue of child custody under the UCCJA.
The Uniform Child Custody Jurisdiction Act has been widely accepted throughout the United States in determining whether courts have jurisdiction to adjudicate child custody matters. This law is embodied in *94 our statutes in LSA-R.S. 13:1700 et seq. The UCCJA was also adopted by the State of Florida in 1977. The law in both states is identical.
The purpose of the UCCJA is to avoid jurisdictional competition and conflicts, promote interstate cooperation, litigate custody where child and family have close connections, discourage continuing conflict over custody, deter abductions and unilateral removal of children, avoid relitigation of another state's custody decision, and promote exchange of information and other mutual assistance between courts in different states. LSA-R.S. 13:1700; Peery v. Peery, 453 So.2d 635 (La.App.2d Cir.1984).
When there is a dispute concerning which state properly possesses jurisdiction over a child custody matter, the UCCJA is applied to resolve those conflicts. Douglas v. Douglas, 528 So.2d 699 (La.App.2d Cir. 1988). Although under the UCCJA, more than one state can actually have jurisdiction over a child custody proceeding, that act also specifies circumstances and situations in which courts may and should decline to exercise jurisdiction. Peery v. Peery, supra.
LSA-R.S. 13:1702 sets forth conditions necessary for a court to exercise jurisdiction over a child custody case. That statute provides:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from the state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future case, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
(B) Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
(C) Physical presence of the child while desirable, is not a prerequisite for jurisdiction to determine his custody.
LSA-R.S. 13:1712 provides that courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with the UCCJA or which was made under factual circumstances meeting the jurisdictional standards of the UCCJA, so long as the decree has not been modified in accordance with the jurisdictional standards substantially similar to those of the UCCJA.
Therefore, in light of these principles, we must analyze the facts of this case to determine whether, at the time the plaintiff filed suit in Florida, that State had jurisdiction to decide the child custody issue.
It must be remembered that, even though the plaintiff is now objecting to jurisdiction of the Florida court, it was the plaintiff who initially filed suit in Florida *95 and sought to invoke the jurisdiction of that court under the UCCJA. The plaintiff asserted that it was in the best interest of the child to have Florida assume jurisdiction because the child and at least one contestant had a significant connection with that state, there was available in the state substantial evidence concerning the child's present or future care, protection, training and personal relationships and it appeared that no other state would have jurisdiction under the prerequisites of the UCCJA.
In an accompanying affidavit, executed pursuant to the Florida equivalent of our LSA-R.S. 13:1708,[1] the plaintiff asserted that the child lived in Louisiana most of his life, but that no other custody proceedings were pending in any other state and that the plaintiff was a resident of Florida, had family in Florida, and intended to return to Florida upon completion of his active duty in the military.
The defendant mother did not attack the jurisdiction of the Florida court over the divorce or the determination of child custody. She appeared in those proceedings and asserted her own claim to be appointed primary residential custodian of the child.
Florida assumed jurisdiction over both the divorce and child custody proceedings. The Florida court found that jurisdiction was proper for the child custody determination because "the pleadings reflect that the state of Florida is the most practicable place to litigate the matter of custody of the parties' minor child."
Accordingly, and after a full hearing, the court named the defendant as the primary residential custodian of the child. Thereupon, simply because the result reached by the Florida court was not satisfactory to the plaintiff, he then filed for custody in Louisiana almost immediately. The plaintiff did not claim that the Florida judgment should be modified, but rather argued that it was invalid.
We find that under the facts presented to the Florida court, that court did in fact have jurisdiction over the child custody determination and its judgment is valid.
Both parties appeared in the Florida proceeding and submitted themselves to the jurisdiction of that court. Consent of the parties cannot confer jurisdiction and a judgment rendered by a court lacking proper legal power is void. LSA-C.C.P. Art. 3. However, under the facts of this case, the Florida court did have jurisdiction under the UCCJA by virtue of significant connections between the plaintiff and the child.
It has been suggested that in cases where different forums are competing for jurisdiction, the tests for determining jurisdiction under LSA-R.S. 13:1702 are listed in descending preferential order. See Renno v. Evans, 580 So.2d 945 (La.App.2d Cir. 1991); and Douglas v. Douglas, 528 So.2d 699 (La.App.2d Cir.1988). Here, at the time the Florida proceedings were initiated, no other court was exercising jurisdiction over a child custody determination between these parties. Under such circumstances, we need not determine whether some other *96 state might have had jurisdiction under the preferential order of jurisdictional tests.
In this case, the plaintiff himself represented to the court that in the best interest of the child, the Florida court should assume jurisdiction. The Florida court determined that by virtue of the plaintiff's residency in Florida and the presence of the plaintiff's family in that state, the child and the plaintiff had a significant connection with that state and there was available in Florida substantial evidence concerning the child's present or future care, protection, training and personal relationships. See LSA-R.S. 13:1702(A)(2). Therefore, under the UCCJA, Florida had jurisdiction over this matter.
The plaintiff, dissatisfied with the results of the Florida proceedings, filed suit in Louisiana attacking the Florida judgment. The plaintiff now contends Louisiana is the child's home state and that jurisdiction is proper here. The plaintiff attempted to explain his choices in his appellate brief. The plaintiff noted that he had, prior to his remarriage to the defendant, obtained a divorce and custody of the child in Florida and he contended that "at the time [he] filed his petition in Florida in November, 1989, he thought things would go just as smoothly as they had the first time."
In the present proceedings, the defendant filed exceptions of lack of subject matter jurisdiction and res judicata. Under the UCCJA, the trial court was correct in sustaining the defendant's exceptions.
It must be remembered that the Florida custody decision, in proceedings instituted by the plaintiff, was less than three weeks old when the plaintiff chose to attack it in another forum. LSA-R.S. 13:1711 provides:
A custody decree rendered by a court of [Florida] which had jurisdiction under § 1702 binds all parties who have been served ... or notified in accordance with § 1704 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties, the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this Part. [Emphasis supplied.]
In this case, the parties submitted themselves to the jurisdiction of the Florida court which had jurisdiction over the child custody determination under UCCJA. Therefore, the trial court in this state was correct in ruling that, at the time this case was filed in Louisiana, the Florida custody decree was binding on the plaintiff. While it is true that if the plaintiff had first filed in Louisiana, he might have been able to show that this was the child's home state, Florida also had jurisdiction and rendered a decree which was binding on the parties.
Said another way, although Louisiana was arguably the home state of the child when the Florida proceedings were filed, nevertheless, the Florida court had jurisdiction by virtue of the significant contacts enjoyed by this military family with the state of Florida. The Florida court clearly had jurisdiction to rule upon the divorce proceedings and to determine the status of its permanent residents, and, as a part of those proceedings, to determine the best interest of the child and resolve the issue of his custody. Under those circumstances, we cannot say that the Florida court did not have jurisdiction just because Louisiana, in which no custody action was pending, may have also been the child's home state.
Therefore, in this case, on the unique factual situation presented, the trial court was correct in declining to exercise jurisdiction to relitigate the issue of child custody only weeks after the same issue had been decided by a competent court of another state. This decision by the trial court is in accordance with one of the general purposes of the UCCJA, found in LSA-R.S. 13:1700(A)(6), which is to avoid relitigation of custody decisions of other states in this state insofar as feasible. Any other solution in this case would sanction unconscionable forum shopping.
The plaintiff relies on the case of Peery v. Peery, supra, which he claims is directly on point in this case. However, Peery is *97 factually distinguishable. First, in Peery, simultaneous proceedings for custody had been instituted in courts of different states. This kind of conflict is the sort of situation the UCCJA is designed to remedy. Further, Peery did not involve a situation where one party sought custody in a state and then, when he was unsuccessful, filed suit in another state to collaterally attack the other court's judgment.
The plaintiff also argues that Speights v. Rockwood, 451 So.2d 1275 (La.App.3rd Cir. 1984), supports his position that the Louisiana court should exercise jurisdiction in this case. However, Speights is also distinguishable from the present case for reasons similar to those discussed in Peery, supra.
In the present case, the plaintiff is not claiming modification of the Florida decree, but seeks to make a collateral attack on a Florida judgment which was rendered in a proceeding which he originally instituted.
Also, the plaintiff has shown no compelling evidence that exercise of the jurisdiction by the Louisiana court is now warranted in the best interest of the child. Therefore, Speights is not controlling.
We find that, based upon the facts peculiar to this case, jurisdiction in Florida was proper. However, we do note that, at some point, and if circumstances warrant, the plaintiff may seek modification of the Florida decree in an appropriate forum. At that time, jurisdiction of the action to modify will be determined under the provisions of the UCCJA.

CONCLUSION
Based upon the unique factual situation presented in this case, the trial court decision to decline to exercise jurisdiction under the UCCJA in this child custody case is affirmed. All costs are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] LSA-R.S. 13:1708 provides:

A. Every party in a custody proceeding in his first pleading or in an affidavit attached to that pleading shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall further declare under oath whether:
(1) He has participated (as a party, witness, or in any other capacity) in any other litigation concerning the custody of the same child in this or any other state.
(2) He has information of any custody proceeding concerning the child pending in a court of this or any other state, and
(3) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.
B. If the declaration as to any of the above items is in the affirmative the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.
C. Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding.